After the argument, Chancellor James delivered the j r ., , decree ofthe court*
The plaintiff in his bill, among many other matters sets forth brat he being an inhabitant of St. Augustine, was in April, 1804, the owner of a schooner called the Amistad, which he sent under the care of a certain Mr. Gleises as supercargo, and a certain Mr. Spooner, as captain, with a cargo, to Baracoa. That Gleises sold the schooner and cargo at Baracoa, and with the proceeds purchased a Spanish brig which he named the Sally. That he executed a bill of sale of the brig to Spooner, an American, to cover the property from the British, and took a counter bill of sale from Spooner, acknowledging die vessel not to be his, and then proceeded with passengers on board to Charleston. That the brig arrived in Charleston in the beginning of August, 1804, and Gleises applied to th-, defendant Delaire to take the consignment of her, and to make the requisite advances ; and that he at the same time acquainted him that the complainant was the real owner of the brig Sally, and that she was covered property, and though the right to her iras ostensibly in Spooner, that yet he had a counter bill of sale, which he shewed to the defendant Delaire. That Delaire after receiving the above information agreed to accept the consignment, and make the necessary advances. That Gleises and Spooner on various occasions told Delaire, that-the complainant was the owner ofthe brig; and that Gleises wrote to the complainant an account of all his proceeding and communicated the substance of his letter to Delaire. The bill then states that the defendant Villeneuve also knew that Ver-monet was the real owner of the brig; and further charges that Delaire knowing the brig to be the property of complainant, planned a voyage for her to Bourdeaux, put on board freight of his own, obtained that of others, and loaded her, having made sundry advances for her repairs *325 and out fit, to the amount of about 02000. That with a direct view to said voyage, and to secure repayment of his advances, he took from the captain a bottomry bond for 02,217, on the brigand freight, payable at Bourdeaux, and a bill of exchange payable also at Bourdeaux. That the brig being ready for sea on the fourth of September, Gleises, on demand of Delaire, to obtain insurance, delivered to him all the brigs papers, and that Delaire effected the insurance, viz. 06,215 on the body of the sea letter brig Sally, whereof Wm. Spooner was master, and 02,344, on her freight at a premium of 5 per cent. The bill further charges that the brig with a pilot on board was detained in the Roads, having commenced her voyage, from the 5th to the 8fh of September, and then was driven ashore by a storm. That the defendant Delaire being informed thereof, sent a message to Gleises not to be uneasy as the brig was insured. That at first he co-operated with the brokers of the insurers, and proceeded to unload the brig, but soon after, anxious to get his advances repaid, he instead of waiting the arrival of the brig at Bourdeaux-, he broke up the voyage, and cancelled the insurance, of his own authority; though there had been no protest. The bill further states that complainant having received no accounts of his schooner Amistad for five months, and casually learning that she had been sold, and the Sally bought, and that the latter was in Charleston, he sent in August a certain Fitzpatrick to Charleston with a power of attorney to obtain from Gleises a settlement of accounts, and possession of the brig; and having heard a good report of Delaire, he recommended his attorney to him, and wrote, requesting his aid, for the purposes aforesaid. That the- said Fitzpatrick immediately on his arrival in Charleston, delivered to Delaire, complainant’s letter, which stated his great confidence in him; that the brig was his property, and Gleises supercargo, and Spooner only captain ; that both had betrayed his confidence, and that he had sent Fitzpatrick as his attorney, with papers. to substantiate his claim, and requested his assistance *326 for that purpose. “ And though Delaire received complainant’s letter between the 15th and 20th of September, and on the 10th of October, wrote a letter to complainant, assuring him that he would take the same care ^is interests as his’ own,” that yet he had proceeded on the 3d of October to cancel the insurance and to break up the voyage to Bourdeaux; and afterwards ne - gligently suffered the' brig to remain 6 weeks on the marsh, continued the crew on board at a great and unnecessary expense ; suffered provisions valued at $4,00 to be unnecessarily wasted, and the. brig to be despoiled of a great number of articles, valued at $800 more, which are not in the inventory delivered by Delaire after the sale. The bill further states a communication between Delaire and Villeneuve respecting the sale of the brig; and that the latter knowing of the counter sale, hesitated about purchasing; but Delaire having made Spooner cancel the bottomry for $2,217, and give a new deed for the sum of $3,060, including therein sundry pretended charges, he then exhibited the same to Villeneuve as an evidence of Spooner’s proprietorship in the brig. Vil-leneuve however still hesitated, and Delaire to obviate all objections, arrested Spooner for the $3060, and while in the custody of the sheriff, extorted from him a bill of sale of the brig, on which he said with exultation to Villeneuve, “ all is now settled, the brig is mine but Villeneuve still refused to buy without the concurrence of Gleiscs. That in the mean time Gleises bad been arrested by a certain Flotard, and thrown into gaol, where he was tampered with by Villeneuve, and a bribe offered him to obtain the counter bill of sale, but he constantly refused to give it up. That Delaire finally consented to warrant the vessel, and a sham sale of her was made on the 22d of November, from Delaire to Villeneuve for $4,300. The bill further charges that Fitzpatrick, complainant’s attorney, had no power to sell the brig, and could convey none to Delaire. That complainant vexed at the d- lays end other disagreeable circumstances attending the vessel, did *327 write on the 20th of October to his agent Fitzpatrick, to sell the brig, provided he could clear Si ,200 by the sale; but that he wpuld prefer a freight of 84,000: and that notwithstanding the above express provision, the said brig • • f • has been sold, and the said Delaire pretends that there is, after deducting all the charges upon her, a balance of no more than $234 in favor of complainant.
The bill then prays that defendants may answer fully, and account, and that the title of complainant to the brig may be established.
The separate answer of the defendant Delaire, sets forth that he knows nothing about the schooner Amistad, or of her being sold, and the Sally purchased with the proceeds, or of her being covered as American property. That he Saw the bill of sale from Gleises to Spooner, and supposed it a bona fide transfer. He denies that Gleises told him he had purchased the brig for complainant, or that she was covered property, or that he had taken a counter sale, or that he shewed the counter sale to him. He admits that Glei-ses said something about a counter sale, at the same time holding a paper in his hand, but that he did not look at it. That Gleises did deliver to him several papers relating to the brig, but he denies that any of them shew any interest in her to be in complainant. He acknowledges that Gleis-es told him he meant to write to complainant, but was ignorant of the substance of the communication. Defendant denies that Spooner ever told him that complainant was the owner of the brig, or that Gleises ever spoke of him as such, or represented him in any other light than as a partner. .Fie states that the true reason for his advances was the importunity of Spooner, to whom he did in the first instance advance $2,000 on account of the brig; to secure which, he insisted on a bottomry on the brig and freight, payable at Boordeaux, and a bill of exchange payable in the same manner. He admits that when the brig was ready for sea, Gleises delivered to him the papers relative to the brig, and he upon the order of Spooner, effected the insurance as set forth in the bill, but does not re *328 collect being informed by Gleises that the brig was trails-ferred to Spooner merely to make her a sea-letter brig. — - On the contrary, the defendant avers that Gleises always J . . . J declared that the brig was his property, while Spooner al~ s0 declared that she belonged to him. Defendant admits the brig had on board a valuable cargo belonging to defendant and others, and was insured for S3,000. That she had a pilot on board, had commenced her voyage, and was driven upon the marsh on the '8th September. That he was informed of it by Spoonef, and advised a protest.— That he ordered the cargo to be unloaded, and in the first instance did not intend to break up the voyage. But he admits that he did on the 3d October cancel the insurance, and break up the voyage, the same being a just and prudent measure, and the only mode by which a return of the premium could be obtained, the said brig not being so found and furnished, as in case of loss to entitle the insured to a recovery from the underwriters. Defendant denies persuading the freighters to take back their goods; they demanded the restoration of them as a right, and threatened to make defendant responsible for their detention. He denies refusing to order a survey, and that he broke up the voy age through interested motives only : the fact was that more monies were necessary to carry it on, and he did not choose to advance them. He denies that he persuaded Spooner to cancel the bottomry; but admits that finding.it in vain to expect payment of his advances from the freight, without additional advances, he drew out an account for the disbursements already made, and presented the same to Spooner, and that he acknowledged the account, but refused to pay it. That defendant then sued him, and held him to bail, and when in the custody of the sheriff, but of his own accord, Spooner gave defendant a bill of sale of the brig, which defendant accepted, being-persuaded that the property of her was in’ him. That the consideration of the transfer was $3060, being the sum due by Spooner, and for which defendant gave him a discharge of his debt. Defendant denies all collusion between *329 himself and Villeneuve, and avers the sale to him to have been fair and public. He admits that be was informed by Fitzpatrick, that he was dispatched to Charleston by complainant, to obtain from Gleises a settlement of accounts and possession of the brig, and that Fitzpatrick brought him a letter from complainant, stating that he was the owner of the brig, and that such information was communicated to him previously to the transfer made by Spooner.; but both Gleises and Spooner having declared themselves to be the owners, and this third claim being then brought forward, defendant thought the bill of sale to Spooner must establish the right in him, and that he might cohsci-entiously take his bill of sale of the. brig. ' That defendant also got complainant’s agent Fitzpatrick to witness the bill of sale from Spooner, supposing if he had any objections to such sale, he would make them, and if he made none, his principal could not afterwards censure defendant. Defendant admits that in his letter of the 14th November, he said he had then sold the brig, which was the case as he' then thought, but upon some disagreement arising between Villeneuve and himself as to the terms of the sale, the brig was afterwards sold at public sale.
Defendant submits that he has merely received his due for monies advanced, and if a loss "must fall either upon him'or complainant, it is equitable it .should fall on complainant, he having reposed confidence in those, who have betrayed him, and made him a party to a clandestine transaction, violating one of the laws of the general government.
The separate answer of the defendant- Villeneuve also sets forth that he denies any knowledge of complainants being owner of the brig Sally, or how she had been purchased, or that he examined her papers. That' Gleises asserted the brig to.be his and Spooner’s. He denies having tampered with Gleises as stated in the bill. That he was satisfied with Spooner’s title to Delaire, and Delaire’s to him. He avers that Gleises, in his presence, told the Spanish captain for whom defendant bought the brig, that he had in his possession an important document relative to the *330 brig, which he would surrender for >$300, but denies any bribe was offered him to withdraw his opposition. to the sale,
In making up the decree of the court in this case, the principal grounds for consideration arc, 1st. — Whether the defendants acted without a knowledge of the claim of' the complainant to the brig Sally ? 2d. Whether the defendant Delaire can bé justified in breaking up the voy" age, and vacating the policy ?
Upon the first ground, complainant to prove that the defendants knew him to be the real owner of the brig, has produced as a witness, the supercargo Gleises, who proves every thing indeed that complainant could wish. But the defendant Villeneuve denies in his answer all knowledge of the claim of the complainant; and the defendant De-laire also declares himself to have been a stranger to it until the arrival of Fitzpatrick, and that even then, as Spoon-er had a bill of sale, which appeared to be a fair one, and there were three claimants, Gleises, Spooner and Vermo-net, he concluded that the legal right must be in him who had the bill of sale, and that complainant at most could only be a partner in the brig. He therefore, according to his answer, was in the dark as to the claim of complainant.— To corroborate these answers, defendants have produced the evidence of Mr. Chancoigne, who proves that Gleises always spoke of the brig as being his property, and that ■ the witness, though a son-in-law of Delaire, and knowing most of his concerns, never heard of the claim of Vermo-net until lately. Complainant therefore has sought a discovery, and here are the answers of two defendants of respectable character upon oath, corroborated by the evidence of Mr. Chancoigne, another respectable witness,- to prove that defendants were strangers to the claim of complainant; and to contradict this, there is only the testimony of Gleis-es, who appears to say the least of him, to prove a great deal too much. Upon the weight of evidence therefore, the court must determine that Villeneuve at least acted without knowledge of the claim of complainant, and is conse *331 quently an innocent purchaser. As to Delaire, some further objection arises against him, viz: That he recognized the right of complainant, when he wrote ¡on before the sale of the brig, that he would take the same care of complainant’s interest as of his own : but we must not garble the letter; and in another part of it Delaire expressly says, that we were unable to devise the nature of your connections, he (Gleises) having never mentioned your name.— Frpm these expressions it would seem that Delaire has at least, acted with consistency throughout, in denying that he ever heard of Vermonet’s claim .from Gleises, and the declaration that he would take the same care of complainant’s interest as of his own, is consistent and reconciliable with his idea that complainant was a partner. But even supposing that Delaire did receive from Fitzpatrick a knowledge of the claim pf complainant, yet it is granted on all hands that the captain (Spooner) did receive advances for the brig from Delaire, and that he had the power to make the bottomry as a security for repayment. What then will be the result ? That if Deiaire’s conduct can be justified in vacating- the policy, and breaking up the voyage, that then he was right to make use of every legal and reasonable remedy in his power to recover back' his disbursements. This leads us to the second ground, and it appears from the evidence of Gleises himself, that though this brig was- covered property, yet she was entered by Spooner, the agent of complainant, as American property, and that entry was sworn to. It further appears from the answer of Delaire, that by the order of Spooner, he had the vessel ensured as American property, not knowing her to be covered. And again, we learn from Mr. Tunno that the premium for' ensufing covered property is much higher than that for ensuring American.— What then is the conclusion ? It is that by the contrivance of Spooner, and in all probability that of Gleises also, the agents of complainant, there was a fraud practised upon the underwriters, and -the policy would have been void, (The case being thus circumstancecl, and the brig also ben *332 ing not well found, the freighters in the mean time come to some knowledge of the transaction, and demand a return °*goods as a matter of right, or that they would make Delaire liable for them. Whereupon, he as a prudent measure, and with the concurrence of Spooner, the ostensible owner, breaks up. the voyage, and vacates the insurance. Under all these circumstances, the ’court cannot blame him : they are not willing to favor consignees in breaking Up voyages, and yacating insurances without orders from consignors; but yet at the same time they think the rigor of the general rule must bend to circumstances, and that Delaire in this case was justified in taking the steps which he did. Besides there being three claimants in the case, it is probable that Delaire did not well know to which of them to apply for orders, and therefore acted in concurrence with the one who appeared to have the best claim, and was in possession of the bill of sale. As to the sale of the brig from Spooner to Delaire, it ap-péars to the court that it was a compromise that took place while Delaire was enforcing his legal remedy for the recovery of his disbursements, and that the brig sold for nearly the sum complainant asked for her. It also appears that Fitzpatrick, the attorney of complainant, was privy to the whole transaction, and did not object to it. Indeed it seems that he gave it an implied sanction by becoming a witness to the transfer. How then can Vermonet expect to recover ? He is bound by the acts of his agents, and if he has been unfortunate, he must place it to his own want of sagacity in employing such improper persons. He who trusts most must suffer most. It has indeed been said that Fitzpatrick himself had no power to sell, and therefore could convey none to Delaire. But upon examining his power of attorney, there appear in it the following expressions, viz. that he was vested with the most ample power which he might stand in need of without limits. This needs no comment. Upon these reasons therefore the court are of opinion that if Delaire could not be said to be entirely a stranger, to the claim of *333 complainant, that yet he did not become acquainted with it, until after he had made his advances andhis own rights had accrued; that under the particular circumstances of this case he was justified in breaking up the voyage of the brig Sally, and that the subsequent sale of the brig from Spooner to Delaire was a fair transaction, founded upon his right to recover back monies advanced, and that the same took place under the implied sanction of the agent of complainant.
Shith for complainant.
for defendant.
It is therefore decreed that the sale of the brig to De-laire by Spooner is a good one, and that the accounts be referred to the master.
There was afterwards a motion for a rehearing; but it does not appear that there was any alteration in the substance of the decree.
Chancellor MaRshall dying in the autumn of the year 1805,- Waddy Thompson, then Solicitor on the Western circuit, was elected in his room, in December, 1805.